UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:12-CV-00565-TBR

GUY M. LERNER                                                          Plaintiff

v.

ERIC K. SHINSEKI, *et al.*                                          Defendant


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants' Partial Motion to Dismiss. (Docket No. 18.)  Plaintiff has responded, (Docket No. 25), and Defendants have replied, (Docket No. 26).  This matter is now ripe for adjudication.  For the reasons that follow, the Court will GRANT Defendants' Partial Motion to Dismiss.


BACKGROUND

Plaintiff Guy Lerner, M.D. (Lerner), is a Kentucky-licensed physician employed by the U.S. Department of Veterans Affairs (VA), pursuant to 38 U.S.C. § 7401(1), as a full-time permanent physician at the Robley Rex Veterans Administration Medical Center (VAMC) in Louisville, Kentucky.  Defendants in this action are Edwin Earl Garr, III, M.D., the VAMC's chief of surgical service; Wayne L. Pfeffer, the VAMC's medical center director; Eva M. Egolf, who serves as patient advocate at VAMC and administrative assistant to Defendant Gaar; Christy A. Rowzee, a supervisory human resources specialist at the VAMC; and Jennifer Vaught, a human resources specialist at the VAMC (collectively "Employee Defendants").  Also Defendants in this action are

the VA and Eric K. Shinseki, in his official capacity as the Secretary of Veterans Affairs (collectively "VA Defendants").

Lerner alleges that after informing his superiors of certain deficiencies in care at the VAMC, the Employee Defendants "embarked on a campaign of progressive discipline against him," which "began with micro-management of his work, but quickly progressed to a program designed to yield his termination." (Docket No. 25, at 1.) This led to a "proposed reprimand" issued by Defendant Garr in February 2011, which was later reduced to an "admonishment" in April 2011. (Docket No. 1, at 9.) Lerner further claims that in the months thereafter, "Gaar continued to scrutinize [him] and initiated investigations for any perceived infraction [Gaar] could conjure . . . focusing on trivial, inconsequential, and erroneous issues pertaining to his practice." (Docket No. 1, at 10.) According to Lerner, the Employee Defendants fabricated patient complaints, which culminated in a "proposed action" against him in the form of a ten-day suspension. Defendant Pfeffer conducted a hearing on November 2, 2011, and, later that month, upheld Gaar's proposed ten-day suspension of Lerner.

Lerner appealed his suspension to the Disciplinary Appeals Board (DAB) in December 2011, and the DAB conducted a two-day hearing in March 2012. The DAB issued its decision in August 2012. The DAB determined that the charges against Lerner should be sustained in part, concluding "that the sustained specifications were serious enough to warrant discipline"; however, the DAB reversed the ten-day suspension and substituted a five-day suspension in light of the testimony and evidence presented on appeal. (*See* Docket No. 1-1.)

Lerner alleges that in the time since the DAB's March 2012 hearing the Employee Defendants' actions against him have persisted.   He also claims that "Defendants are determined to oust [him] from the VAMC due to his First Amendment activities and his repeated expressed concerns for patient welfare."   (Docket No. 1, at 17.)   He insists that he "has no valid belief that, absent the Court's intervention, Defendants will cease their present campaign against him."   (Docket No. 1, at 17.)

In an unnumbered Count, Lerner seeks review of the DAB's final decision pursuant to 38 U.S.C. § 7462.   (Docket No. 1, at 17-24.)   Lerner's Complaint also alleges nine numbered counts against the several Defendants arising out of disciplinary action taken against him.   (*See* Docket No. 1.)   In Counts I – V, Lerner alleges that the Employee Defendants each violated his civil rights under the First and Fifth Amendments.   In Count VI, Lerner alleges that the Employee Defendants engaged in a civil conspiracy to oust him from the VAMC and to prevent and/or retaliate against him for exercising his First Amendment rights.   In Count VII, Lerner alleges wrongful retaliation by the VA Defendants in taking personnel action against him because he exercised his First Amendment right to free speech.   In Count VIII, Lerner seeks declaratory relief in the form of a judicial declaration that the VA must adhere to the requirements of the Fifth and Fourteenth Amendments.   And finally, in Count IX, Lerner seeks injunctive relief related to personnel investigations, "enjoining the VA from continuing its constitutionally flawed fact findings and proposed actions. . . . prohibiting any additional retaliatory practices. . . . prohibiting the VA from continuing its unconstitutional investigative and disciplinary proceedings. . . . requiring that the VA provide him access to any and all mitigating and/or exculpatory evidence in its

possession during its prosecution of disciplinary charges against him. . . . [and] barring the VA from taking any disciplinary action against him unless approved by an independent review body not affiliated with the VA and/or the individual Defendants in this action."  (Docket No. 1, at 41-42.)

## STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint may be attacked for failure "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party.  *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)).  "The court need not, however, accept unwarranted factual inferences."  *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*Id.* (citations omitted).  A complaint should contain enough facts "to state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged— but has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*

Furthermore, the Rules provide that a party may file a motion for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "Subject matter jurisdiction is always a threshold determination," *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," *Shultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008).  "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists."  *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.*, 368 F.3d 569 (6th Cir. 2004).

DISCUSSION

The Employee Defendants move, pursuant to Fed. R. Civ. P. 12(b)(1) & (6), to dismiss the individual claims against them in Counts I – VI, arguing that the Court lacks subject-matter jurisdiction and that Lerner has failed to state a claim upon which relief can be granted.  (Docket No. 18, at 1.)  The VA Defendants move, also pursuant to Fed. R. Civ. P. 12(b)(1) & (6), to dismiss Counts VII, VIII, and IX to the extent those counts seek relief and review by this Court beyond that permitted by 38 U.S.C. § 7462(f).  The Court will begin by addressing those arguments relative to the Employee Defendants and Counts I – VI before turning to those relative to the VA Defendants and Counts VII – IX.

I.      **Claims Against Employee Defendants, Counts I – VI**

The Employee Defendants argue that the individual constitutional claims asserted against them in Counts I – VI are not actionable and must be dismissed.  The Employee Defendants further argue that even if those claims are actionable, they nevertheless fail because they are barred by the doctrine of qualified immunity.  The Court agrees with both points.

A.      **Sovereign Immunity and *Bivens* Claims**

Generally, the United States is immune from suit unless it consents to be sued, "and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit."  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  The Sixth Circuit, in the context of sovereign immunity, holds to this narrow view of consent:  "The United States can be sued only when it has expressly given its consent to be sued.  The waiver must be

express, clear and unequivocal.  Further, the language of any waiver of sovereign immunity is strictly construed in favor of the United States."  *Reed v. Reno*, 146 F.3d 392, 398 (6th Cir. 1998) (internal quotation marks and citations omitted).

However, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court held that a plaintiff could maintain a constitutional cause of action to recover damages against federal law enforcement officers who allegedly violated his Fourth Amendment rights, despite the absence of a federal statute expressly authorizing such a cause of action.  403 U.S. 388, 389 (1971).  The Supreme Court has since recognized a *Bivens* cause of action in the context of other constitutional guarantees.  *See, e.g.*, *Carlson v. Green*, 446 U.S. 14 (1980) (finding a *Bivens* cause of action available in the context of the Eighth Amendment's guarantee against cruel and unusual punishment); *Davis v. Passman*, 442 U.S. 228 (1979) (finding a *Bivens* cause of action available in the context of the due process guarantees of the Fifth Amendment).

But a *Bivens* claim will not lie for every alleged violation of a constitutional right.  Specifically, a *Bivens* cause of action may be defeated in two situations: (1) "when defendants demonstrate special factors counseling hesitation in the absence of affirmative action by Congress," and (2) "when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective."  *Carlson*, 446 U.S. at 18-19 (internal quotation marks omitted) (citing *Bivens*, 403 U.S. at 396-97; *Davis*, 442 U.S. at 245-47).  Further, there is no presumption in favor of a *Bivens* cause of action, and the Supreme Court has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts."  *Schweiker v. Chilicky*, 487 U.S. 412, 421

(1988); *see also Ashcroft*, 556 U.S. at 675 ("Because implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants'" (quoting *Corr. Servs Corp. v. Malesko*, 534 U.S. 61, 66 (2001))).  "The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Schweiker*, 487 U.S. at 421-22.  To this end, the Court recently noted, "in most instances we have found a *Bivens* remedy unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).  Accordingly, the Supreme Court has held against applying the *Bivens* model to claims of First Amendment violations by federal employers, *Bush v. Lucas*, 462 U.S. 367 (1983), and has declined to extend *Bivens* to claims against federal agencies, *FDIC v. Meyer*, 510 U.S. 471 (1994), or against private persons, *Malesko*, 534 U.S. at 51.

For example, in *Bush v. Lucas*, the Court declined to recognize a *Bivens* cause of action in favor of a NASA engineer who alleged violations of his First Amendment rights by his superiors.  462 U.S. at 368-69.  There, the plaintiff alleged that he suffered an adverse personnel action, specifically a demotion, in retaliation for exercising his First Amendment right to criticize the agency. *Id.* at 369-70.  In considering the propriety of a *Bivens* claim, the Court began by assuming that the plaintiff's "First Amendment rights were violated by the adverse personnel action" and that "civil service remedies were not as effective as an individual damages remedy and did not fully compensate him for the harm suffered"—"Thus, we assume, a federal right has been violated and Congress has provided a less than complete remedy for the wrong." *Id.* at 372-73.  However, the Court went on to reason: "The question is not what remedy

the court should provide for a wrong that would otherwise go unredressed.  It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue."  *Id.* at 388.  The Court found such a remedial system in the Civil Service Reform Act of 1978 (CSRA) and its associated regulations, *see id.* at 383-386, and, thus, refused to create a *Bivens* remedy: "Because [the plaintiff's First Amendment] claims arise out of an employment relationship that is governed by comprehensive procedural provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy." *Id.* at 368.

Lerner argues that "[t]he Title 38 procedures [he] is pursuing in the Merit System Protection Board [(MSPB)], unlike those available under the Civil Service Reform Act, are not a legitimate substitute for a *Bivens* claim."  (Docket No. 25, at 12.) The Court disagrees.  In *Fligiel v. Samson*, the Sixth Circuit expressly concluded, "Like the CSRA, Title 38 provides a comprehensive regulatory scheme for employees of the VA."  440 F.3d 747, 752 (6th Cir. 2006).  In particular, 38 U.S.C. § 7462 outlines the procedures Congress intended to provide for a review of the adverse action Lerner experienced.  Thus, through Title 38 and its associated VA regulations, Congress created an administrative mechanism for handling employment and employment-related grievances.   Much like *Bush* and *Schweiker*, it is not determinative that the administrative mechanism provided may not furnish as extensive a remedy as a private damages action—what matters is simply whether Congress has created a remedial

scheme that counsels against supplementation by a judicially created *Bivens* remedy. The Court finds that here Congress has done just that.

A plethora of other Sixth Circuit decisions applying *Bivens* and the CSRA support the Court's conclusion.  For example, in *Jones v. Tenn. Valley Auth.*, the Sixth Circuit held that no *Bivens* cause of action existed for a federal employee's alleged First and Fifth Amendment claims against a federal agency and its employees because the CSRA provided "a comprehensive statutory scheme which governs the administrative and judicial review of adverse personnel actions against federal employees."  948 F.2d 258-59, 262, 264 (6th Cir. 1991) (citing *United States v. Fausto*, 484 U.S. 439, 443 (1988)).  "In the field of federal employment, even if no remedy at all has been provided by the CSRA, courts will not create a *Bivens* remedy."  *Id.* at 264.  Similarly, in *Borkins v. United States*, the Sixth Circuit held that a plaintiff "cannot use a *Bivens* action to supplement his MSPB remedy established by Congress."  191 F.3d 451, 1999 WL 777538, at *1 (6th Cir. 1999) (unpublished table decision).  Other decisions in this Circuit have reached an analogous result.  *See, e.g.*, *Miller v. Federal Bureau of Investigation*, 149 F.3d 1183, 1998 WL 385895, at *1-2 (6th Cir. 1998) (unpublished table decision) (finding an FBI agent had no *Bivens* cause of action for alleged First Amendment violations against the agency because the CSRA provided a comprehensive administrative scheme and "is to be viewed as the exclusive avenue for redress of constitutional violations in the field of federal employment"); *Seay v. U.S. Postal Serv.*, 779 F.2d 52, 1985 WL 13896, at *1 (6th Cir. 1985) (unpublished table decision) (finding a postal service employee "simply did not have the non-statutory *Bivens*-type remedy available for him as a means to seek redress of alleged constitutional violations

arising from his federal employment" because Congress had provided postal workers "a comprehensive, judicially-reviewable administrative system for violations of their rights"). Furthermore, a number of other circuits that have applied the Supreme Court's decision in *Bush* to claims by VA employees have found that the administrative remedial procedures in Title 38 and its associated VA regulations preclude *Bivens* causes of action. *E.g.*, *Hardison v. Cohen*, 375 F.3d 1262 (11th Cir. 2004); *Berry v. Hollander*, 925 F.2d 311 (9th Cir. 1991); *Maxey v. Kadrovach*, 890 F.2d 73 (8th Cir. 1989); *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986); *Heaney v. U.S. Veterans Admin.*, 756 F.2d 1215 (5th Cir. 1985); *see also Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005); *Sugrue v. Derwinski*, 26 F.3d 8 (2d Cir. 1994).[1]

Accordingly, the Court finds that because Title 38 provides a comprehensive regulatory scheme established by Congress, Lerner is precluded from challenging an adverse employment decision via a *Bivens* action. Thus, the Court lacks jurisdiction to entertain Lerner's constitutional claims against the Employee Defendants, and those claims must be dismissed.

---

[1] Lerner ignores this wealth of circuit court decisions and instead points the Court to a decision by the District of Connecticut, *Maglietti v. Nicholson*, 517 F. Supp. 2d 624 (D. Conn. 2007), to argue that CSRA-related decisions should not apply here and that he should be allowed to proceed with his claims under the *Bivens* rubric. (Docket No. 25, at 14-15.)   The Court is unpersuaded. For one, Lerner's argument is contrary to the law of this Circuit that "[l]ike the CSRA, Title 38 provides a comprehensive regulatory scheme for employees of the VA." *Fligiel,* 440 F.3d at 752. For another, his position goes against the mass of on-point decisions by the majority of other circuit courts addressing *Bivens* claims in precisely this context. And, moreover, the District of Connecticut's decision in *Maglietti* appears directly at odds with the then-controlling law of the Second Circuit, *see Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005), and thus, as Defendants suggest, appears to be a questionably decided aberration of little persuasive value here.

**B.     Qualified Immunity**

Qualified immunity exists to protect government officials when they perform discretionary functions.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999).  In such situations, officials are generally protected from liability for civil damages so long as their conduct does not violate clearly established constitutional or statutory rights.  *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 538-39 (6th Cir. 2008).  The defense exists to protect public officials "from undue interference with their duties from potentially disabling threats of liability," *Harlow*, 457 U.S. at 806, by providing them "breathing room to make reasonable but mistaken judgments," *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).  Properly applied, "it protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 474 U.S. 335, 341 (1986)).  "[T]he protection of qualified immunity applies regardless whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Pearson v. Callahan*, 555 U.S. 233, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).  Thus, an official will be shielded from liability if he or she acted under the objectively reasonable belief that his or her actions were lawful.  *See Ahlers v. Schebil*, 188 F.3d 365, 372-73 (6th Cir. 1999).

As an initial matter, Lerner argues that "[b]ecause much of [the qualified immunity] inquiry is fact-sensitive, it is usually and more appropriately addressed at a summary judgment stage."  (Docket No. 25, at 20.)  However, as the Supreme Court has advised, "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided

where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Moreover, another district court in this Circuit, relying on precedent from the Supreme Court and the Sixth Circuit, recently addressed and rejected an argument identical to Lerner's:

> [The plaintiff] contends that resolution of the qualified immunity defense is premature at this juncture. She argues that "[a] qualified immunity defense is more appropriately argued in a motion for summary judgment because the argument requires a fact intensive analysis," and claims that "all Plaintiff need do to survive a motion to dismiss is allege a violation of a clearly established right." . . . [T]his argument is unpersuasive because the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Indeed, "[t]he promise of an early exit from a lawsuit offered by qualified immunity is an empty promise if plaintiffs are routinely permitted to survive a motion to dismiss with mere 'notice pleading.'" *Argmengau v. Cline*, 7 F. App'x 336, 345 (6th Cir. 2001).

*Brown v. Hale*, 2012 WL 1815625, at *6 (M.D. Tenn. May 17, 2012) (internal docket citation omitted). This Court is of a like mind and finds it appropriate to consider the qualified immunity issue now in the context of Defendants' motion to dismiss.

Courts in this Circuit approach the issue of qualified immunity by asking two questions: (1) in viewing the facts in a light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation occurred, and (2) if so, was the constitutional right clearly established at the time of the violation? *Silverstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). If the facts taken in a light most favorable to the plaintiff fail to show that the defendant officials' conduct violated the plaintiff's constitutional rights, then the inquiry is at an end. *Weaver v. Shadowin*, 340 F.3d 398, 406 (6th Cir. 2003) (citing *Saucier*, 533 U.S. at 201). Although a defendant bears the

burden of pleading the defense of qualified immunity, the burden of rebutting qualified immunity falls on the plaintiff.  *See, e.g.*, *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008).

Lerner's specific constitutional claims against the Employee Defendants are as follows:  (1) violations of Lerner's First Amendment right to free speech by Defendants Garr and Pfeffer, (Docket No. 1, at 25, 28 (Counts I & III)), and (2) violations of Lerner's property and liberty interests in violation of the Fifth Amendment, (Docket No. 1, at 27 (Count I)).  Lerner does not identify any particular constitutional rights violated by Defendants Egolf, Rowzee, or Vaught, aside from stating that these Defendants' "conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known."  (Docket No. 1, at 31-32, 35 (Counts III, IV, & V).)  However, Lerner does allege that all Employee Defendants conspired "to prevent and/or retaliate against [him] for exercising his rights under the First Amendment." (Docket No. 1, at 36 (Count VI).)  The Employee Defendants argue they are entitled to qualified immunity because Lerner has failed to allege a cognizable violation of his constitutional rights.  Upon reviewing the relevant precedent of the Supreme Court and this Circuit, the Court agrees.

### 1.    Lerner's First Amendment Freedom of Speech Claim

Lerner's First Amendment claims center on his communications to Defendant Garr and other VA administrators in which he expressed concern "about deficiencies in patient care, such as overburdened resources caused by inappropriate patient loads, as well as the VAMC's apparent tolerance of physicians leaving the hospital during

surgeries for which they are responsible."[2]  (Docket No. 1, at 5.)  The Supreme Court distinguishes between the liberties enjoyed by public employees in the context of their employment and those enjoyed by private citizens:

> When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedoms. Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services.  Public employees, moreover, often occupy trusted positions in society.  When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions.
>
> At the same time, the Court has recognized that a citizen who works for the government is nonetheless a citizen.  The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens. So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively.
> . . . .
> . . . Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it

---

[2] Lerner also makes passing reference to statements he made in August 2010 at a public forum at the American Legion concerning the proposed relocation of the VAMC.  (*See* Docket No. 25, at 23; *see also* Docket No. 1, at 8.)  He seems to argue that it is uncontested that his statements at that forum were made as a private citizen.  (*See* Docket No. 25, at 23.)  He also states that upon becoming aware he had spoken at that forum, Defendant "Pfeffer initiated an investigation of Dr. Lerner for his First Amendment Activities."  (Docket No. 1, at 8.)  However, by Lerner's own admission, "No disciplinary action came directly from that investigation, as [he] had been within his rights to participate in the First Amendment activities."  (Docket No. 1, at 8.)  Thus, Lerner asserts no First Amendment violation or adverse action against him based on his participation in that event, and whatever speech Lerner engaged in at that event bears no relation to his First Amendment claims in this action.

> does not empower them to "constitutionalize the employee
> grievance."

*Garcetti v. Ceballos*, 547 U.S. 410, 418-20 (2006) (citations omitted).  The Court went on in *Garcetti* to conclude:  "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."  *Id.* at 421-22.

Lerner argues that *Garcetti* actually supports his First Amendment claims because when he complained of the VAMC's policies and practices to his supervisors, he did so not as a VA employee but as a private citizen speaking out on a matter of public concern.  (*See* Docket No. 25, at 21-23.)  He reasons that because he was not charged with the VAMC's scheduling requirements, the allocation of resources, or "the duty of unearthing dangerous practices in the surgical divisions," his communications on those subjects were not in his capacity as a VAMC physician.  (Docket No. 25, at 22-23.)  According to Lerner, "[h]e could have remained silent," but instead, "[o]ut of a private citizen's concern . . . he spoke up to protest the practice."  (Docket No. 25, at 23.)

The Court is not persuaded by Lerner's attempt to distance himself from the holding in *Garcetti*.  As the Supreme Court advised: "[T]he proper inquiry is a practical one.  Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."  547 U.S. at 424-25.  This language belies Lerner's attempt to distinguish

*Garcetti* by arguing that when he spoke to his supervisors complaining of VAMC policies and practices he did so "out of a private citizen's concern."

This Circuit's precedent further supports the conclusion that Lerner was speaking as a VA employee.  In *Fox v. Traverse City Area Public Sch. Bd. of Educ.*, the Sixth Circuit held that "[s]peech by a public employee made pursuant to *ad hoc* or *de facto* duties not appearing in any written job description is nevertheless not protected if it 'owes its existence to [the speaker's] professional responsibilities.'" 605 F.3d 345, 348 (6th Cir. 2010) (second alteration in original) (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 544 (6th Cir. 2007)).  There, the Sixth Circuit concluded that the plaintiff's statements were made as a public employee and, thus, did not merit First Amendment protection.  *Id.* at 349.  The plaintiff in *Fox* alleged that she was terminated from her position as a public school teacher after voicing concerns to her supervisors that her class size exceeded that allowable by law.  *Id.* at 347.  The court rejected the plaintiff's argument that her complaints were not made pursuant to her official duties merely because she did not control the number of students assigned to her.  *Id.* at 349. The court reasoned that because her "complaints were directed solely at her supervisor, not to the general public . . . . [i]t is clear—without any intricate parsing of [her] job description—that her complaint about class size 'owes its existence to' her responsibilities as a special education teacher."  *Id.* (quoting *Weisbarth*, 499 F.3d at 544).

Thus, *Fox* instructs that whether a "public employee raises complaints or concerns up the chain of command at his workplace" is a relevant consideration for determining whether "that speech is undertaken in the course of performing his job."

*Id.* at 350 (quoting *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)).  Another relevant consideration is whether the content of the employee's communication is "nothing more than 'the quintessential employee beef: management has acted incompetently.'"  *Haynes v. City of Circleville, Ohio*, 474 F.3d 357, 365 (6th Cir. 2007) (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988)).  But ultimately, the Court must "look to the content and context of the plaintiff's speech to determine whether [his] statements were made pursuant to merely to [his] professional duties." *Fox*, 605 F.3d at 348.

Here, Lerner's statements regarding what he perceived as deficiencies in patient care and overburdened resources caused by inappropriate patient loads were made directly "up the chain of command" to his supervisors, Defendant Garr and VAMC Chief of Staff Marylee Rothschild, as were his statements regarding the practice of physicians leaving the hospital during surgeries they were scheduled to attend.  (Docket No. 25, at 3.)  Additionally, these statements could also fairly be characterized as "the quintessential employee beef: management has acted incompetently."  Therefore, in looking to the content and context of Lerner's communications, these considerations support the conclusion that his statements were made not as a private citizen but instead as a VA physician employed at the VAMC.  Accordingly, the Court finds that Lerner's communications to his supervisors were made in the context of his employment at the VAMC and do not merit First Amendment protection; as such, Lerner has failed to show that a constitutional violation occurred, and the Employee Defendants are therefore entitled to qualified immunity on Lerner's First Amendment claims.

### 2.      Lerner's Fifth Amendment Due Process Claims

Lerner's due process claims focus on his property interests in his medical licensure and in his employment at the VAMC.  Lerner also alleges damage to his professional reputation, asserting that "[t]he stigma imposed by Defendants' tortious actions has foreclosed professional opportunities for [him]."  (Docket No. 25, at 24.)  The Employee Defendants argue that Lerner's due process claims fail because no interest has been deprived and because damage to reputation is not actionable under *Bivens*.

To assert a viable due process claim, a plaintiff must show (1) that he has a life, liberty, or property interest protected by the Due Process Clause, (2) that this interest was deprived within the meaning of the Due Process Clause, and (3) that he was not afforded adequate procedural rights prior to that deprivation.  *See Franklin v. Aycock*, 795 F.2d 1253, 1261 (6th Cir. 1986).  Lerner alleges that as a result of the disciplinary action imposed by the VAMC, he was made to appear before the Kentucky Board of Medical Licensure and "defend his right to preserve his medical license," which he claims directly injured his "liberty interest in his professional reputation" and "his property interest in his medical license."  (Docket No. 1, at 41.)  As to his property interest in his medical license, he argues: "A license to practice medicine is a private property interest that rises to the level of constitutional protection.  It is also not enough for the Defendant to minimize the effect of the stain that they have placed on Dr. Lerner's record by observing that he remains employed and authorized to practice medicine."  (Docket No. 25, at 24.)   And as to his liberty interest in his professional reputation, he argues that under *Paul v. Davis*'s "stigma plus" test, his reputational

injury is actionable because of actual injury to his property interest in his medical licensure. (Docket No. 25, at 23-24 (referencing *Paul v. Davis*, 424 U.S. 693 (1976)).) Finally, as to his property interest in his employment at the VAMC, he argues that "because Defendants are trying their hardest to cause [his] unemployment, that injury will almost certainly translate into economic harm very soon." (Docket No. 25, at 25.)

The Court finds that Lerner's due process claims relative to his medical license fail for several reasons. First, the Employee Defendants have neither deprived Lerner of his medical license nor do they have any ability to do so; that authority is vested exclusively with the Kentucky Board of Medical Licensure by Ky. Rev. Stat. § 311.565(1)(c). Second, Lerner does not allege that he has been actually deprived of his medical license or ability to practice medicine in the Commonwealth of Kentucky. Third, his assertion that "state licensure board regulations have been held to create a right to a 'blemish-free' medical license for doctors," which he bases on a 25-year-old, nonbinding decision by the Seventh Circuit, is unpersuasive and has no controlling authority on this Court. (Docket No. 25, at 24 (referencing *Fleury v. Clayton*, 847 F.2d 1229, 1232 (7th Cir. 1988)).) Thus, relative to his medical license, Lerner has failed to demonstrate that his interest was deprived within the meaning of the Due Process Clause.

The Court further finds that Lerner's due process claims relative to his employment also fail. Lerner is, as of the briefing on the instant Motion, still employed at the VAMC. Thus, again, he has alleged no deprivation within the meaning of the Due Process Clause. The fact that he alleges Defendants are continuing to try to "oust [him]

from his permanent full-time position" at best implies that a deprivation *might* occur, not that it *has* occurred.

Finally, the Court finds that Lerner's due process claims regarding damage to his professional reputation fail as well. First, even assuming such a claim were actionable if attached to the deprivation of a valid property interest, the Court has, in the preceding paragraphs, found no deprivation upon which to strap Lerner's alleged reputational injury. Second, this Court, relying on the Supreme Court's decisions in *Siegert v. Gilley*, 500 U.S. 226 (1991), and *Paul v. Davis*, 424 U.S. 693 (1976), has held previously that "there is no constitutional protection for the interest in reputation and damages which flow therefrom." *Azmat v. Shalala*, 2000 WL 33975223, at *1 (W.D. Ky. 2000); *see Paul*, 424 U.S. at 712 ("[W]e hold that the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law.").

Thus, the Court finds that Lerner has failed to set forth a viable due process claim against the Employee Defendants. As such, he has not shown that he suffered a constitutional violation at the hands of these Defendants, and they are therefore entitled to qualified immunity on Lerner's Fifth Amendment due process claims.

\* \* \*

For these reasons, the Court finds that Lerner's individual constitutional claims asserted against the Employee Defendants in Counts I – VI are not actionable under *Bivens* and thus warrant dismissal. The Court further finds that even if those claims were actionable, they nevertheless fail because the Employee Defendants are entitled to qualified immunity. Accordingly, the Court will GRANT the Employee Defendants' motion to dismiss Counts I – VI of Lerner's Complaint.

II.     **Claims Against the VA Defendants, Counts VII – IX**

The VA Defendants move to dismiss Counts VII, VIII, and IX against them to the extent those counts seek relief and review beyond that permitted by 38 U.S.C. § 7462(f). (Docket No. 18, at 1.) Though not perfectly clear from his Response, Lerner seems to argue that because the Court has jurisdiction to review the DAB's final decision under § 7462(f)(2), it follows that the Court has jurisdiction to hear his claims for wrongful retaliation, injunctive relief, and declaratory relief as well. The Court will begin by addressing its jurisdiction under § 7462 before turning to each of Lerner's remaining counts.

VA physicians, such as Lerner, are afforded procedural protections when they experience a "major adverse action" as defined by 38 U.S.C. § 7461. A suspension qualifies as a major adverse action. *Id.* § 7461(c)(2)(B). Further, the major adverse action was the result of "professional conduct or competence." *Id.* § 7461(c)(3); (Docket No. 1-1, at 2 ("The action being appealed is a major adverse action. The charge upon which the action is based, in whole or in part, involves an issue of professional conduct and competence . . . .").  Adverse actions involving professional conduct or competence are governed by § 7462, which provides for judicial review. Thus, Lerner's appeal of the DAB decision is properly before this Court for review.

A.     **Count VII – Wrongful Retaliation**

In Count VII, Lerner alleges the VA took adverse action against him in retaliation for his exercising his First Amendment right to free speech. (Docket No. 1, at 37.) The VA Defendants argue that to the extent Lerner seeks to assert a constitutional claim against the VA, the Court lacks jurisdiction because that claim is

barred by sovereign immunity.  The VA Defendants further argue that to the extent Lerner seeks relief for purported "whistleblowing" activities, the Court also lacks jurisdiction to hear such a claim.  Lerner has not directly responded to these arguments. The Court agrees with the VA Defendants on both points and, so, will dismiss Lerner's wrongful retaliation claim against them.

As stated *supra* Part I.A, the United States is immune from suit unless it consents to be sued, "and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit." *Mitchell*, 445 U.S. at 538 (quoting *Sherwood*, 312 U.S. at 586).  The Court finds that the United States has not waived its sovereign immunity for suits for damages based on claims that its employees' conduct violated the Constitution.  *See generally Meyer*, 510 U.S. at 483-86 (holding that a *Bivens*-style cause of action did not extend to agencies of the federal government); *Humphrey*, 221 F.3d 1334, 2000 WL 876773, at *2 (finding that a *Bivens* suit will not lie against federal agencies, the United States itself, or federal officials sued only in their official capacity); *Warren v. Bureau of Prisons*, 2008 WL 1743499, at *2 (W.D. Ky. Apr. 11, 2008) ("[A] *Bivens* cause of action is only available against federal officers in their individual capacities, not the federal agency which employs the persons acting under federal law or the federal government itself.").  Thus, to the extent Lerner premises his wrongful retaliation claim in Count VII on *Bivens*, that claim is barred by the sovereign immunity of the United States thereby rendering this Court without jurisdiction to hear it and warranting its dismissal.

The VA Defendants further argue that to the extent Lerner seeks relief for whistleblowing activities, the Court similarly lacks jurisdiction because the MSPB has

exclusive jurisdiction over such claims and because the review of MSPB decisions can only be had by the Court of Appeals for the Federal Circuit.  (Docket No. 18-1, at 21.)  The Court agrees.  The Whistleblower Protection Act (WPA), 5 U.S.C. § 1221, which falls within the CSRA, provides statutory protections for federal employees who disclose illegal or improper government activities.  As the Federal Circuit has stated, "the legislative history of [5 U.S.C.] § 2105(f) supports the view that Congress intended to provide the protections of the WPA to all Title 38 health care employees." *Harding v. Dep't of Veterans Affairs*, 448 F.3d 1373, 1377 (Fed. Cir. 2006).  The CSRA generally precludes federal court review of a plaintiff's claim unless expressly authorized by statute.  *See Alder v. Tenn. Valley Auth.*, 43 F. App'x 952, 955-56 (6th Cir. 2002); *see also Lestiko v. Stone*, 47 F.3d 1169, 1995 WL 27503, at *2 (6th Cir. 1995) (Kennedy, J., dissenting) (unpublished table decision) ("The [CSRA] precludes federal court review of plaintiff's claim against the United States.  The CSRA specifically excludes employees in plaintiff's position from administrative and judicial review under that act." (citing *Fausto*, 484 U.S. at 439; *Booth v. United States*, 990 F.2d 617, 619-20 (Fed. Cir. 1993))).  Furthermore, the Supreme Court recently has held that "the CSRA grants the MSPB and the Federal Circuit jurisdiction over petitioners' appeal because they are covered employees challenging a covered adverse employment action. Within the CSRA review scheme, the Federal Circuit has authority to consider and decide petitioners' constitutional claims."  *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2139 (2012).

Here, Lerner has sought to avail himself of the protections of the WPA by filing an action before the MSPB pursuant to 5 U.S.C. § 1221(a).  That action, styled *Lerner*

*v. Dep't of Veterans Affairs*, CH-1221-13-0162-W-1, was filed in December 2012 and remains pending. Thus, the MSPB properly has jurisdiction over any claims Lerner may pursue under the WPA, and the review of any decision by the MSPB must be had by the Federal Circuit. Accordingly, to the extent Lerner's wrongful retaliation claim seeks relief for whistleblowing activities, the Court finds it lacks subject-matter jurisdiction and that any such claim against the VA Defendants in Count VII must be dismissed.

### B.      Count VIII – Declaration of Rights

In Count VIII, Lerner seeks a judicial declaration "that the VA is required to adhere to the policies and procedures that comport with due process as set forth in the Fifth and Fourteenth Amendments of the U.S. Constitution," "that federal law and his employment agreement with the VA require unbiased, thorough investigations of any and all disciplinary charges against him," and "that federal law and his employment agreement with the VA prohibits harassment by his superiors regarding his personal finances and his speech activities." (Docket No. 1, at 39.) Lerner seeks to invoke the Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.* (Docket No. 1, at 3.) The VA Defendants argue that because neither the Declaratory Judgment Act nor the APA provides an independent basis of jurisdiction, dismissal of Count VIII is warranted. (Docket No. 24, at 22-24.)

The Sixth Circuit has held that "§ 2201 [the Declaratory Judgment Act] does not create an independent cause of action." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).

"A federal court accordingly 'must have jurisdiction already under some other federal statute' before a plaintiff can 'invok[e] the Act.'"  *Id.* (alteration in original) (quoting *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007)).  Lerner, relying on an unpublished decision by the District of Colorado, insists that "other courts have entertained claims for injunctive relief alongside 38 U.S.C. § 7462 appeals," and urges that this Court should as well.  (Docket No. 25, at 10 (citing *Kreso v. Shinseki*, 2011 WL 6413828 (D. Colo. Dec. 21, 2011)).)  But the question before that court was simply whether the appeal should be redocketed as an "AP" case "because discovery, witness disclosures, and other pretrial procedures [were] unnecessary and inappropriate in a case involving review of an administrative decision."  *Id.* at *2.  Lerner cites no other authority for the proposition that this Court has jurisdiction to hear his claim for declaratory relief.

The District of Colorado's decision in *Kreso*, even if it were binding on this Court, is not directly on point because the court there did not address whether jurisdiction under 38 U.S.C. § 7462 provides a sufficient jurisdictional basis to append a claim for declaratory relief under the Declaratory Judgment Act.  As such, the Court finds little persuasive value in *Kreso*.  Rather, in light of the narrow review and relief[3] permitted by § 7462(f)—which is necessarily limited to a review of the final order or decision by the DAB—the Court finds it would be inappropriate to bootstrap an

---

[3] Section 7462(f) expressly limits the relief the Court may provide upon judicial review to "set[ting] aside an[] agency action, finding, or conclusion," based on a prescribed set of errors, which are limited to decisions found to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; or (C) unsupported by substantial evidence."  § 7462(f)(2)(A)-(C).  That section does not expressly authorize any other form of relief or action by the reviewing Court.

independent cause of action for declaratory relief onto the limited jurisdiction for judicial review provided under § 7462(f).

The Sixth Circuit has also held that "[t]he APA does not provide a federal court with any independent basis for jurisdiction." *Mich. Dep't of Envtl. Quality v. U.S. Envtl. Prot. Agency*, 318 F.3d 705, 709 (6th Cir. 2003) (citing *Califano v. Sanders*, 430 U.S. 99, 106-07 (1977)). Moreover, the APA does not entitle a party to judicial review where other statutes limit such review. *See* 5 U.S.C. § 702. And in *Fligiel*, the Sixth Circuit held that a Title 38 employee "is precluded from invoking the protections of the APA to obtain judicial review of her adverse employment action that she was denied under the Veterans' Benefits Act." 440 F.3d at 752. Because the Sixth Circuit has interpreted § 7462(f) as demonstrative of Congress's intent to limit review of adverse actions to a narrow set of circumstances—*i.e.*, "major adverse actions involving professional conduct or competence" affecting only those employees listed under § 7401(1)—and because the text of the APA does not permit judicial review where other statutes limit such review, the Court finds it would be inappropriate to permit Lerner's declaratory relief claim to proceed based solely upon the limited review jurisdiction provided by § 7462(f).

Accordingly, the Court finds it lacks jurisdiction to hear Count VIII of Lerner's Complaint. Therefore, Lerner's declaratory relief claim will be dismissed.

### C. Count IX – Injunctive Relief

In Count IX, Lerner seeks injunctive relief "enjoining the VA from continuing its constitutionally flawed fact findings and proposed actions," "enjoining the VA from barring his duly appointed representatives from any critical disciplinary proceedings,"

"prohibiting any additional retaliatory practices," "prohibiting the VA from continuing its unconstitutional investigative and disciplinary proceedings," "requiring that the VA provide him access to any and all mitigating and/or exculpatory evidence in its possession," and "barring the VA from taking any disciplinary action against him unless approved by an independent review body."   (Docket No. 1, at 41-42.)   The VA Defendants argue that Count IX must be dismissed because the Court's jurisdiction to hear matters related to Title 38 employee personnel decisions is limited to that prescribed by § 7462(f) and because there is no independent jurisdictional basis for the relief Lerner requests.  (Docket No. 18-1, at 24.)   The VA Defendants reason that, in essence, Lerner seeks to have the Court inappropriately "insert itself into the VA's personnel decision making process," "act as a judicial intermediary over evidentiary disputes during DAB proceedings," and "requir[e] the VA to vet any disciplinary decisions 'through an independent review body.'"   (Docket No. 18-1, at 24.)   Lerner, for his Response, again merely points the Court to the District of Colorado's decision in *Kreso* to argue that at least one other court has allowed injunctive claims to proceed along with the administrative appeal to which they relate.  (Docket No. 25, at 11.)

Not unlike his claim in Count VIII, the Court finds it lacks a jurisdictional basis to entertain Lerner's claim for injunctive relief.  The Court's jurisdiction to review a final decision by the DAB is limited to that provided in § 7462(f)(1), and the relief the Court may provide is limited to that in § 7462(f)(2).  Accordingly, the Court finds it is without jurisdiction to hear Lerner's claim for injunctive relief and, thus, Count IX will be dismissed.

\* \* \*

For these reasons, the Court finds it lacks jurisdiction to entertain Lerner's claims against the VA Defendants for wrongful retaliation (Count VII), declaratory relief (Count VIII), and injunctive relief, (Count IX). The Court will thus GRANT the VA Defendants' motion to dismiss Counts VII – IX of Lerner's Complaint.

## CONCLUSION

For the reasons above, IT IS HEREBY ORDERED that Defendants' Partial Motion to Dismiss, (Docket No. 18), is GRANTED, and Counts I, II, III, IV, V, VI, VII, VIII, and IX of Plaintiff's Complaint are hereby DISMISSED. Plaintiff may proceed with his unnumbered claim for judicial review of the final decision by the Disciplinary Appeals Board pursuant to 38 U.S.C. § 7462(f).

IT IS SO ORDERED.

Date:

cc:     Counsel